USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/25/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| L.B., by and through his parents and next friends, S.B. and L.H.B., and S.B. and L.H.B. individually,<br><br>       Plaintiffs,<br><br>-against-<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>       Defendant. | 1:21-cv-9356 (MKV)<br><br>**ORDER DENYING EMERGENCY RELIEF** |

MARY KAY VYSKOCIL, United States District Judge:

  This case comes before the Court on Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [ECF No. 10]. Plaintiff L.B. is a fourteen-year-old child with a disability who receives special education services from the New York City Department of Education (the "DOE" or the "Defendant"). Because L.B. is a minor, this action is brought on his behalf by his parents, S.B. and L.H.B. (together, "Plaintiffs").

  Plaintiffs contend that the DOE's failure to provide L.B. placement at an appropriate school which can accommodate his educational needs as specified in his Individualized Education Plan ("IEP") violates L.B.'s rights under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1401, *et seq*. Plaintiffs seek a temporary restraining order and preliminary injunction requiring the DOE to fund L.B.'s attendance at his current school, selected by his parents, during the pendency of his case. In support of their request, Plaintiffs filed a memorandum of law [ECF No. 10-2] ("Mem."). Defendant has opposed the requested injunctive relief. [ECF No. 19] ("Opp."). The Court has carefully reviewed all of the submissions. For the reasons stated herein, Plaintiffs' request for a temporary restraining order and preliminary injunction is denied.

1

## BACKGROUND

L.B. has long needed special educational services. [ECF No. 2] ("Compl") ¶ 2; Mem. at 2. L.B. is diagnosed "with Autism Spectrum Disorder and Specific Learning Disabilities." Compl. ¶ 1; Mem. at 2. From the advent of his scholastic career, L.B. has been provided an IEP. Pursuant to his IEP, L.B. "received special education services at a nonpublic school, Learning Spring, from fourth grade through his graduation from eighth grade in June 2021." Compl. ¶ 6; Mem. at 2. Learning Spring does not have a high school program. Compl. ¶ 22; Mem. at 2. As a result, once L.B. graduated to the ninth grade commencing in the 2021-2022 school year, it was necessary for him to attend a new school. Compl. ¶¶ 9, 23-24; Mem. at 2-3.

The Committee on Special Education convened an IEP meeting in December 2020 to address L.B.'s needs moving forward. Compl. ¶ 24; Mem. at 2-3. At the meeting, the Committee "agreed that L.B.'s needs could not be met in the public school system and referred his case to the Central Based Support Team [] for a non-public high school placement." Mem. at 3; Compl. ¶ 45. That Team "referred him to state-approved high schools," which, after contacting L.B.'s parents, rejected L.B. as a student, or were unable to meet certain criteria of his IEP. Mem. at 3; Compl. ¶ 49. L.B. was left with no high school placement. *See* Compl. ¶¶ 47, 51.

Ultimately, L.B. was accepted by the Cooke School and Institute, Mem. at 4, apparently following an application by his parents. *See* Compl. ¶ 52. L.B.'s parents "cannot afford to pay the tuition," but the school agreed "to let L.B. start because of his family's low income and their agreement to vigorously pursue [the] DOE for funding for his placement." Mem. at 4; Compl. ¶ 54. If the DOE does not pay, the school "reserves the right to terminate L.B. with 30 days' notice," and L.B.'s parents would be responsible for the payment. Mem. at 4; Compl. ¶ 54.

On June 17, 2021, L.B.'s parents notified the DOE that he would be enrolled at Cooke unless they were provided an appropriate placement. Compl. ¶ 53; Mem. at 4. On July 1, 2021, Plaintiffs filed a due process hearing request "challenging DOE's failure to provide L.B. with a" free appropriate public education for the 2021-2022 school year, and "requested that [the] DOE provide pendency protection and fund[ing] while the due process proceeding is pending." Mem. at 4; Compl. ¶ 55. On October 7, 2021, a hearing officer issued a decision that found that L.B. had "aged out of his previous placement[, the Learning Spring,]" and that "through no fault [of] either party, the last agreed upon placement, or the then-current placement is not available to him." Mem. at 4. The hearing officer "specifically found that the Defendant ha[d] failed to identify a school that could meet L.B.'s needs as set forth in his IEP," and "concluded that there was no pendency placement available" for him. Mem. at 4; Compl. ¶ 60.

Plaintiffs then commenced this action on November 12, 2021, [ECF No. 2], and promptly thereafter moved for a temporary restraining order. [ECF No. 10]. The Court entered an order directing Plaintiffs to serve the motion on the Defendant, set November 30, 2021 as the deadline for the Defendant to respond, and scheduled a hearing on the motion for December 2, 2021. [ECF No. 11]. On November 24, 2021, the DOE sought an adjournment of the briefing schedule *with the consent of the Plaintiffs*, which the Court granted in part. [ECF Nos. 13-14]. On December 2, 2021, the DOE requested an extension of time to respond to Plaintiffs' Complaint as it was "currently focused" "on opposing Plaintiffs' application for preliminary injunctive relief." [ECF No. 15]. Again *on consent of the Plaintiffs*, the Court granted the request. [ECF No. 18]. The next day, December 3, 2021, the DOE again sought a further extension of the time to respond to Plaintiffs' application for preliminary injunctive relief, again *with the consent of the Plaintiffs*. [ECF No. 16]. On consent, the Court granted the extension, and set Defendant's

3

opposition to be due January 6, 2022. [ECF No. 17]. The motion is now fully briefed. For the reasons stated herein, the motion for preliminary injunction is denied.

**I.      PLAINTIFF'S APPLICATION FOR A
            PRELIMINARY INJUNCTION IS DENIED**

Plaintiffs' application is brought under two separate provisions of the IDEA. The Complaint and the application ask this Court to direct the DOE to fund Plaintiffs' "stay-put" placement at the Cooke School pursuant to 20 U.S.C. § 1415(j), Compl. ¶ 7, or in the alternative to equitably declare Plaintiffs' placement as Cooke and direct funding pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii), Compl. ¶ 7. Because the two provisions invoke different legal standards, the Court will address each separately.

   *A.      The "Stay-Put" Provision Does Not Permit This
              Court to Direct Funding in This Case*

The IDEA displaces the standard for a preliminary injunction in the narrow circumstance of a parent seeking an order that a student must be permitted to "stay-put" during the pendency of litigation in his or her then-current school placement. *See Ventura de Paulino v. DOE*, 959 F.3d 519, 529 (2d Cir. 2020). Where the "stay-put" provision "is implicated, the statute triggers the applicability of an automatic injunction designed to maintain the child's educational status quo while the parties' IEP dispute is being resolved." *Id.*; *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) ("Pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships."). Plaintiffs expressly seek a "stay-put" placement pursuant to 20 U.S.C. § 1415(j) in this case. Compl. ¶¶ 7, 65; *see also* Mem. at 2.

The "stay-put" provision of the IDEA provides:

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational

> placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j). Thus, the provision operates as an injunction that maintains the student in his or her "then-current educational placement." "[I]mplicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing." *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). Plaintiffs believe their child is entitled to "stay put" at the Cooke School and are entitled to funding for their decision to place L.B. at Cooke. *See* Compl. ¶¶ 69-71, 75-77.

Plaintiffs would be correct only if Cooke *was* L.B.'s "then-current educational placement" at the time proceedings were instituted. The Second Circuit has observed that a student's "then-current educational placement" may be "(1) typically the placement described in the child's most recently implemented IEP; (2) the operative placement . . . actually functioning at the time . . . when the stay put provision of the IDEA was invoked; and (3) the placement at the time of the previously implemented IEP." *Mackey v. Bd. of Educ.*, 386 F.3d 158, 163 (2d Cir. 2004). In most cases, "[t]he term '*then-current* educational placement' in the stay-put provision typically refers to the child's last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP." *De Paulino*, 959 F.3d at 532 (emphasis in original). For that reason, the Court cannot credit an argument that because L.B. was enrolled at Cooke before IEP proceedings were initiated, it was his "operative placement." *See id.* at 536 (a parent cannot self-select a placement "and subsequently initiate an IEP dispute to argue that the new school's services must be funded on a pendency basis.").

The Parties generally agree that at least two different IEPs could be the operative IEP that reflects L.B.'s last agreed upon placement. *See* Mem. at 7-8 (identifying an "April 30, 2018," "April 11, 2019," and "December 17, 2020" IEP); Opp. at 3-4, 8 (identifying an "April 2018" and "April 2019" IEP). However, no IEP is in the record on this motion, and the Court does not know what are the requirements of an appropriate placement pursuant to L.B.'s IEP.

The Parties do not dispute that Learning Spring was L.B.'s last agreed upon actual placement. But the Court does not know *why* that is so, except that L.B.'s operational IEP (whatever it may be) resulted in the agreement that placement there was appropriate. *See De Paulino*, 959 F.3d at 532 ("Under the IDEA, an initial placement is made by the school district upon the consent of the parent."). Once an educational placement is made, it "may be changed if, for example, the school district and the parents agree on what the new placement should be." *Id.* Otherwise, the placement "can also be changed if an impartial hearing officer or state review officer finds the parents' new placement to be appropriate by adjudicating the IEP dispute in the parents' favor, and the school district chooses not to appeal the decision." *Id.*

Here, the child "aged-out" of the last mutually agreed upon placement. *See* Mem. at 2-3. The Committee on Special Education agreed that the child's needs could not be met in the public school system, and the state approved schools to which the child was referred all rejected him. Compl. ¶¶ 45, 47-51; Mem. at 3. Thereafter, L.B.'s parents enrolled him at Cooke. Compl. ¶¶ 53-54; Mem. at 4. The Second Circuit forecloses Plaintiffs' arguments that the IDEA permits such action, even if they believe that Cooke was a substantially similar placement to Learning Spring. *Id.* (rejecting argument that a parent is "authorized to invoke the stay-put provision to require the school district to pay for a new school identified by the parent so long as the new school offers substantially similar educational services."). And, as stated, this Court

6

cannot endorse a "stay-put" placement at a school which it does not know conforms to the requirements of the child's IEP.

L.B.'s parents instead have a different recourse available to them: "[i]f parents believe that the state has failed their child[,] they may, *at their own financial risk*, enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state." *Gagliardo v. Arlington Cent. Sch. Dist.*¸ 489 F.3d 105, 111 (2d Cir. 2007) (emphasis added).

Plaintiffs have identified no binding authority that says this Court may direct placement and funding at this stage, an action facially prohibited by the IDEA and Circuit case law, under 14 U.S.C. § 1415(j).  In a case similar to this, the Fourth Circuit determined that 14 U.S.C. § 1415(j) did *not* grant a district court the ability to "seek out alternative placements by ordering the School Board to propose such." *Wagner v. Bd. of Educ.*, 335 F.3d 297, 301 (4th Cir. 2003). In *dicta*, the Second Circuit references *Wagner* for the proposition that "where the school providing the child's pendency services is no longer available *and* the school district either refuses or fails to provide pendency services to the child," the *Wagner* Court mentioned that a charge to change a child's placement could be made pursuant to a different provision of the IDEA: 14 U.S.C. § 1415(i)(2)(C)(iii).  *De Paulino*, 959 F.3d at 534 n.65 (emphasis in original). The Second Circuit did not consider, "much less resolve" whether such relief would be appropriate.  The Court nevertheless will consider whether a preliminary injunction may be issued in this case based on its equitable remedial powers pursuant to Section 1415(i)(2)(C)(iii).

### B.   *Plaintiff is Not Entitled to Emergency Relief Pursuant to 14 U.S.C. § 1415(i)(2)(C)(iii)*

Section 1415(i)(2)(C)(iii) provides that in "any action brought under [the civil remedy provision of the IDEA]," the Court has the power to "grant such relief as the court determines is

appropriate."  Plaintiffs ask this Court to "modify [L.B.'s] placement pursuant to the equitable authority" provided therein.  Compl. ¶ 77.

An application for a preliminary injunction under 14 U.S.C. § 1415(i)(2)(C)(iii) is governed under the familiar equitable relief standard.  To obtain a preliminary injunction, the movant must show "a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest."  *ACLU v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)).

When a preliminary injunction is sought to "affect government action taken in the public interest pursuant to a statute or regulatory scheme," the Court inquires whether the injunction is in the public interest, rather than balancing the equities.  *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020).  The Parties are in agreement that even though Plaintiff's injunction here does seek to affect government action related to a statutory scheme (to the extent the DOE's IDEA enforcement constitutes such a scheme), courts considering preliminary injunctive relief regarding the types of IDEA claims asserted here continue to apply the traditional standard.  *See Ventura de Paulino*, 959 F.3d at 529; *Araujo v. New York City Dep't of Educ.*, No. 20-cv-7032 (LGS), 2020 WL 5701828, at *2 (S.D.N.Y. Sept. 24, 2020); *see also* Opp. at 4; Mem. at 10.

The Second Circuit has made clear that a showing of irreparable harm is "the single most important prerequisite for the issuance" of injunctive relief.  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); *see also* 11A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2951 (3d ed.) ("A demonstration of irreparable injury by the party seeking relief is an essential prerequisite to a temporary restraining order.").  On the

8

present record, Plaintiffs cannot point to any irreparable harm confronting them. L.B. is currently receiving an education at Cooke, a school that is appropriate in the eyes of his parents. The Parties are engaged in ongoing administrative proceedings that ultimately may result in an agreement that Cooke is the appropriate placement for L.B. If they prevail, Plaintiffs could then seek a retroactive reimbursement remedy from the DOE to "pay expenses it should have paid all along and would have borne in the first instance had it developed a proper IEP." *Burlington*, 471 U.S. at 370-71. By Plaintiffs' own admission, Cooke has agreed to waive the fees to attend the school, "because [the Plaintiffs] agreed to vigorously pursue the DOE for funding his placement." Compl. ¶ 54. Plaintiffs indeed are doing so. There is no suggestion that Cooke will deprive L.B., a child with clear special needs, the education it promised. Plaintiffs themselves state that, even if Cooke intended to do so, Cooke has agreed to provide thirty days' notice before any such action was final. [ECF No. 10-1 ¶ 34].

Irreparable harm must also be "actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). Any imminency in this case is undercut by Plaintiffs' own actions. Although Plaintiffs filed their request for emergency relief within two weeks of commencing this action, Plaintiffs thereafter consented to *two* extensions of the briefing period for Defendants to oppose their application, and agreed to extend the time for Defendants to answer their Complaint. This delay undercuts any argument that Plaintiffs face irreparable harm that is imminent and irreparable. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those

rights, however, tends to indicate at least a reduced need for such drastic, speedy action.") (citations omitted).

The Court further struggles to find likelihood of success on the merits where it arguably may not have jurisdiction under 14 U.S.C. § 1415(i).  Subject matter jurisdiction cannot be waived, and the issue of whether the Court has subject matter jurisdiction may be raised at any time during litigation, including *sua sponte* by the Court.  *See TongkookAm., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 786 (2d Cir. 1994); *see also Joseph v. Leavitt*, 456 F.3d 87, 89 (2d Cir. 2006) (courts may raise subject matter jurisdiction issues *sua sponte*).

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court."  *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004).  Plaintiffs' Complaint states that they "have a pending due process proceeding in which they contend, among other things, [the] DOE denied L.B. a free appropriate public education by, among other things, failing to provide an appropriate placement for the 2021-2022 academic year," and seek tuition reimbursement for L.B.'s current school.  Compl. ¶ 8; Opp. at 10.  These arguments are essentially the same claims made here.  Plaintiffs' pending administrative process appears to deprive this Court of subject matter jurisdiction to adjudicate the merits of the Complaint.  *See Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203 (2d Cir. 2007) (the Second Circuit has "routinely stated that the IDEA's exhaustion requirement is jurisdictional.").

Plaintiffs ask this Court to equitably modify L.B.'s placement to be Cooke.  Compl. ¶ 77.  Doing so would force this Court to determine that Cooke is an adequate, appropriate, and comparable placement to the one that Plaintiff had previously at Learning Spring, and/or otherwise complies with the requirements in L.B.'s IEP.  The Court cannot know *what* would be

a substantially similar placement in this case because no IEP or criteria is before it on this motion.  The Court is extremely reluctant to wade into the realm of merit-based decision making before Plaintiffs have exhausted their administrative remedies.  Thus, even if this Court *could* equitably change L.B.'s placement under 14 U.S.C. § 1415(i) (a proposition never endorsed in this Circuit), the Court lacks an adequate record on which to do so.

Finding that Plaintiffs make no showing of irreparable harm or likelihood of success on the merits, the Court does not reach the balance of hardships or the public interest factors.  *See Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020) (the "public interest is always best served by ensuring that constitutional rights are upheld *after a plaintiff has shown a likelihood of success on the merits*.") (emphasis added).

## CONCLUSION

For the reasons stated herein, Plaintiffs' application for emergency relief [ECF No. 10] is DENIED.  Separately, the Parties have sought a pre-motion conference with the Court regarding Defendant's contemplated motion to dismiss this action.  [ECF Nos. 20-23].  The Court has reviewed the letters and directs the Parties to appear for a conference on February 17, 2022 at 11:30am.  The conference will be held telephonically.  To join, dial 888-278-0296 at the scheduled time. When prompted, enter Access Code 5195844.

**SO ORDERED.**

**Date:  January 25, 2022**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**